IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RALOID CORPORATION, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-283 |
| ) | |
| MICHAEL F. O'CONNOR, ) | |
| d/b/a TYPAY, LLC, *et al.*, ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION

At issue in this matter is defendants Michael O'Connor and TyPay Ventures, LLC's Motion to Dismiss or, in the Alternative, to Change Venue. Defendants primarily argue that the case should be dismissed or stayed pursuant to the abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Alternatively, defendants argue that venue is improper and the case should be transferred to the United States District Court for the District of Columbia or the United States District Court for the District of Maryland. For the reasons discussed *infra*, both arguments fail.[1]

I.

According to the Complaint, plaintiff Raloid Corporation ("Raloid") is a Maryland corporation that manufactures parts for the military/aerospace industry under subcontracts with

---

[1] Defendants' motion expressly seeks dismissal or a stay pursuant to Rule 12(b)(1), Fed. R. Civ. P., or a change in venue pursuant to Rule 12(b)(3), Fed. R. Civ. P. In the accompanying memorandum, defendants briefly argue that Counts I and III of the Complaint should be dismissed because they fail to state a claim upon which relief can be granted. Plaintiff did not respond to this argument in its opposition. Defendants argue plaintiff has conceded that the counts fail to state claims. This is incorrect. Plaintiff has made no such concession, as defendants' motion did not seek dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P. Defendants' motion neither cited Rule 12(b)(6), Fed. R. Civ. P., nor contended that plaintiff failed to state a claim upon which relief can be granted. Defendants merely mentioned this argument briefly in their accompanying memorandum.

1

large defense contractors. Compl. ¶¶ 1, 10. Defendant O'Connor is an accountant. *Id.* ¶ 16–17. He conducts his business as Typay, LLC and owns and operates defendant Typay Ventures, LLC (collectively, "Typay"). *Id.* ¶¶ 3–4.

Raloid was founded by Ramon Jadra. Anthony Jadra, Ramon Jadra's son, was previously incarcerated with O'Connor. *Id.* ¶ 10. O'Connor and Anthony Jadra were both incarcerated for tax offenses.[2] *Id.* ¶¶ 9–10. While the two were incarcerated, Anthony Jadra informed O'Connor that Ramon Jadra, then the principal owner of Raloid, was interested in selling Raloid. *Id.* ¶¶ 10–11. O'Connor offered to help Ramon Jadra find buyers for Raloid, and O'Connor ultimately succeeded in doing so. *Id.* ¶¶ 11–12. Specifically, O'Connor found John and James Halinski, O'Connor's tax clients, and James Zelloe, an attorney who had previously represented O'Connor, to purchase Raloid. *Id.* ¶ 12. The Halinskis purchased 51% of Raloid's shares through Raloid, LLC; Zelloe purchased the remaining 49% through Raloid Holdings, LLC. *Id.* ¶ 13.

Following the acquisition, John Halinski became the president of Raloid, James Halinski became the Chief Security Officer, and Zelloe became the Chief Executive Officer. *Id.* ¶ 14. Relying on O'Connor's representation that he was a CPA licensed in Maryland, the Halinskis and Zelloe hired TyPay, O'Connor's business, to provide accounting services for Raloid. *Id.* ¶ 15–16. Raloid alleges that Typay and O'Connor were engaged as contractors. *Id.* ¶ 35. Unbeknownst to the Halinskis and Zelloe, O'Connor was not a CPA licensed in Maryland or any other state.[3] *Id.* ¶ 20.

---

[2] Specifically, O'Connor was convicted of making false statements to the Internal Revenue Service, in violation of 18 U.S.C. § 287, and failing to pay withholding taxes, in violation of 26 U.S.C. § 7202. Compl. ¶ 9. Anthony Jadra was convicted of tax evasion, in violation of 26 U.S.C. § 7201. *Id.* ¶ 10.

[3] O'Connor was previously a licensed CPA in Virginia, but his license expired on August 31, 2009. *Id.* ¶ 18.

In early May 2017, Raloid terminated TyPay and O'Connor, citing "security breaches, ... poor tax advice, and general ineptitude." *Id.* ¶ 35. On March 12, 2019, Raloid filed this action against O'Connor and TyPay. The Complaint alleges counts of (i) breach of contract, (ii) fraud in the inducement, and (iii) civil conspiracy.

Raloid and O'Connor, but not TyPay, are involved in related litigation in Maryland state court ("Maryland action"). The Maryland action was filed prior to the instant federal suit. In the Maryland action Amended Complaint, O'Connor alleges that he and Zelloe agreed to purchase Raloid; O'Connor would purchase 51% through Raloid, LLC, and Zelloe would purchase 49% through Raloid Holdings, LLC. Baltimore Compl. ¶¶ 15–18. O'Connor further alleges that, acting on a mistaken belief that he could not own Raloid until his period of supervised release ended, he entered an agreement with the Halinskis to make them temporary owners of Raloid, LLC. *Id.* ¶ 19–22. Specifically, John and James Halinski would each initially own 50% of Raloid, LLC. When O'Connor's supervised release ended, the Halinskis would transfer 90% of Raloid, LLC's shares to O'Connor and collectively retain 10% of the shares. *Id.* ¶ 22.

O'Connor further alleges, in the Maryland action, that he and the Halinskis agreed that for two years after the acquisition of Raloid, John Halinski would serve as Raloid's president, James Halinski would serve as Raloid's Chief Security Officer, and O'Connor would serve as Raloid's Chief Financial Officer. *Id.* Pursuant to this agreement, O'Connor was employed as Chief Financial Officer of Raloid. *Id.* ¶ 38.

The Maryland action Amended Complaint further alleges that, on April 6, 2017, O'Connor's supervised release was revoked and he was incarcerated for sixty days, beginning August 4, 2017. *Id.* ¶ 47. O'Connor alleges that, although he no longer commuted to the Raloid plant, he continued to perform his duties as Chief Financial Officer between April 6, 2017 and

3

August 4, 2017. *Id.* ¶ 48. Ultimately, Raloid terminated O'Connor on October 6, 2017. *Id.* ¶ 62. According to O'Connor, Raloid failed to pay him wages from May 12, 2017 until the termination of his employment in October 2017. *Id.* ¶¶ 61–63.

O'Connor and Anthony Jadra subsequently filed the Maryland action on November 2, 2018 against Raloid; Raloid, LLC; John Halinski; and James Halinski.[4] *O'Connor, et al. v. Halinski, et al.*, No. 03-C-18-011059 (Balt. Cty. Cir. Ct. filed Nov. 2, 2018). O'Connor asserted only one claim against Raloid—namely, failure to pay O'Connor wages from May 2017 to October 2017, in violation of the Maryland Wage Payment and Collection Law, Md. Code, Lab. & Empl., § 3-501, *et seq.*[5] Raloid moved to sever the claim against it from the rest of the case, but the Maryland court denied the motion. The parties represent that the suit is currently in the discovery phase.

Defendants now contend that Raloid's federal lawsuit arises out of the same circumstances as the pending state lawsuit. Specifically, defendants contend that both lawsuits arise out of the acquisition of Raloid and O'Connor's subsequent provision of financial and accounting services for Raloid. As such, defendants argue that the lawsuits are parallel and that this action should be dismissed or stayed pursuant to the *Colorado River* abstention doctrine. Alternatively, defendants argue that venue is improper and that the case should be transferred to the United States District Court for the District of Columbia or the United States District Court for the District of Maryland.

Defendants' abstention argument fails because, as the following discussion demonstrates, this action and the Maryland action are not parallel and defendants have not identified the requisite

---

[4] Neither Anthony Jadra; Raloid, LLC; nor the Halinskis are party to this federal action.

[5] The First Amended Complaint also asserts claims of: (i) breach of contract against John and James Halinski and Raloid, LLC; (ii) conspiracy to commit breach of contract against the Halinskis; (iii) specific performance against the Halinskis and Raloid, LLC; (iv) wrongful breach of loan agreement against John Halinski and Raloid, LLC; (v) conspiracy to breach loan agreement against the Halinskis and Raloid, LLC; and (vi) unjust enrichment against the Halinskis and Raloid, LLC. *O'Connor, et al. v. Halinski, et al.*, No. 03-C-18-011059 (Balt. Cty. Cir. Ct., Jan. 23, 2019) (First Am. Compl.).

extraordinary circumstances warranting abstention. *See* Part II. Further, defendants' venue argument fails because Raloid has made a prima facie showing that venue is proper in this forum. *See* Part III.

## II.

As the Supreme Court has made clear, "the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (internal quotation marks and citation omitted). This is so even though the concurrent proceedings "may appear to result in a duplication of judicial resources." *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934 (4th Cir. 1992). Yet, despite this general rule, "under the *Colorado River* doctrine, a federal court may abstain from exercising jurisdiction over a duplicative federal action for purposes of 'wise judicial administration.'" *vonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017) (citation omitted). Such abstention may occur only where the state and federal proceedings are parallel and exceptional circumstances exist. *Id.* at 167–68.

For state and federal proceedings to be parallel, they must involve "substantially the same parties litigat[ing] substantially the same issues in different forums." *Id.* at 168 (citation omitted). The Fourth Circuit has construed this requirement "strictly . . . , requiring that the parties involved be almost identical." *Id.* Yet even where the parties "are virtually identical," the actions are not parallel if "the issued raised and remedies sought are not." *New Beckley Min. Corp. v. Int'l Union, United Mine Workers Am.*, 946 F.2d 1072, 1074 (4th Cir. 1991). This is true even where the state and federal actions, and thus the issues they involve, arise out of the same factual circumstances. *Id.* at 1073–74 (holding that state and federal lawsuits arising out of a union's strike and the

5

resulting violence and property destruction were not parallel because the plaintiff sought "compensation in federal court and equitable relief in state court").[6]

But importantly, the mere existence of parallel state and federal proceedings is insufficient to warrant abstention. *Colorado River Water Conservation Dist.*, 424 U.S. at 817. Exceptional circumstances must also exist for abstention to be permissible. *vonRosenberg*, 849 F.3d at 167. Such exceptional circumstances are required because "the Supreme Court has held, over and over, . . . that in the usual case [of parallel state and federal proceedings] the federal courts *must* hear the cases that fall within their jurisdiction." *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934 (4th Cir. 1992) (emphasis in original). Significantly, a finding of exceptional circumstances requires "the 'clearest of justifications' . . . to justify the *surrender* of . . . jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25–26 (1983) (emphasis in original). Six factors must guide the inquiry into whether the requisite exceptional circumstances exist:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others;
>
> (2) whether the federal forum is an inconvenient one;
>
> (3) the desirability of avoiding piecemeal litigation;
>
> (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action;
>
> (5) whether state law or federal law provides the rule of decision on the merits; and
>
> (6) the adequacy of the state proceeding to protect the parties' rights.

*Chase Brexton Health Servs, Inc. v. Maryland*, 411 F.3d 457, 463–64 (4th Cir. 2005). And in assessing these factors, it is important to note that "the balance [must be] heavily weighted in favor

---

[6] Although the Fourth Circuit in *New Beckley* did not clearly hold that the proceedings were not parallel, it concluded *Colorado River* abstention was inappropriate and subsequently characterized the holding as such. *See McLaughlin v. United Va. Bank*, 955 F.2d 930, 935 (4th Cir. 1992) ("In *New Beckley*, the court held that the actions, although 'virtually identical' were not parallel because the remedy sought and the issues raised were not the same.")

of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

### III.

#### A.

Defendants argue that the first requirement of *Colorado River* abstention—parallel state and federal proceedings—is satisfied. For state and federal proceedings to be parallel, both the parties and the issues litigated must be substantially similar. *vonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017). The Fourth Circuit has "strictly construed the requirement of parallel federal and state suits." *Chase Brexton Health Svs., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005). Measured by this standard, defendants' argument that the proceedings are parallel fails; the state and federal proceedings involve different parties and different issues.

With respect to the first requirement of parallel proceedings—namely, substantially similar parties—the Fourth Circuit "require[es] that the parties involved be almost identical." *Id.* Whether this requirement is met is a close question. Although Raloid and O'Connor are party to both the state and federal lawsuit, TyPay, a defendant in this action, is not party to the state lawsuit. Defendants contend that the parties are nonetheless substantially similar because O'Connor owns and operates TyPay. Compl. ¶ 4. But the Fourth Circuit has refused to find state and federal lawsuits substantially similar where the federal plaintiff was not personally party to the state lawsuits but was instead represented through the company of which he was the president and sole shareholder, as well as its wholly-owned subsidiaries. *See McLaughlin v. United Va. Bank*, 955 F.2d 930, 932–35 (4th Cir. 1992).

Yet even assuming the parties are sufficiently similar, the proceedings are not parallel because they do not involve the same issues. Indeed, the Fourth Circuit has concluded that even

where the parties were "virtually identical" and the state and federal suit arose out of the same factual circumstances, the suits were not parallel because they raised different issues and sought different remedies. *New Beckley Min. Corp. v. Int'l Union, United Mine Workers Am.*, 946 F.2d 1072, 1074 (4th Cir. 1991). *See also McLaughlin v. United Va. Bank*, 955 F.2d 930, 934 (4th Cir. 1992) (noting that the Court in *New Beckley* "held that the actions, although 'virtually identical,' were not parallel because the remedy sought and the issues raised were not the same"). Specifically, in *New Beckley*, a company sued its employees' union in both state and federal court for violent incidents associated with a strike. *Id.* at 1071–74. But because the company sought compensation in federal court and equitable relief in state court, and the federal Racketeer and Influenced and Corrupt Organizations Act ("RICO")[7] provided the rule of decision in the federal case, the Fourth Circuit held that *Colorado River* abstention was inappropriate. *Id.* Similarly, the Fourth Circuit in *McLaughlin v. United Va. Bank*, 955 F.2d 930, 935 (4th Cir. 1992), concluded that although "the federal and state actions ha[d] similar claims and dr[e]w on common events," they were not parallel because "they [we]re not totally duplicative."

Precisely this is the case here. Both the state and federal suit arise out of Raloid's acquisition and O'Connor's subsequent provision of accounting services for Raloid. But the state suit involves O'Connor's claim against Raloid for unpaid wages, as well as various claims against other defendants. This action involves Raloid's claims that O'Connor breached his agreement to provide accounting services for Raloid, fraudulently induced Raloid into entering that agreement, and participated in a civil conspiracy to sell Raloid's inventory without authorization and to impair Raloid's relationship with Lockheed Martin Corporation. Raloid has not asserted these claims— or indeed any claims—in the state litigation. As such, this litigation involves issues not raised in

---

[7] 18 U.S.C. §§ 1961–68.

the state litigation. Accordingly, the suits are not parallel. *See New Beckley Min. Corp.*, 946 F.2d at 1074.

Defendants argue that this case and the Maryland action are parallel notwithstanding the fact that plaintiff's claims in the instant case have not been asserted in the Maryland action. This is so, defendants argue, because plaintiffs' claims here could be asserted as counterclaims in the Maryland action. This argument fails. The Fourth Circuit has approvingly quoted the Sixth Circuit's conclusion that the "issue is whether the state case, 'as it *currently* exists, *is* a parallel, state-court proceeding'" *McLaughlin v. United Va. Bank*, 955 F.2d 930, 935 (4th Cir. 1992) (emphasis in original). Indeed, in the quoted case, the Sixth Circuit rejected the notion that the state court proceeding "*could* be modified so as to make it identical to the current federal claim." *Crawley v. Hamilton Cty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984). Such potential modification, the Sixth Circuit found, "is not the issue." *Id.* Rather, the issue is whether the state proceeding as it currently exists is parallel to the federal proceeding. *Id.* The Maryland action as it currently exists is not parallel to the federal action brought by Raloid because TyPay is not a party to the Maryland action and Raloid has not asserted the claims it brings here—or indeed any claims—in the Maryland action. As such, the state and federal proceedings, although related, are not parallel.[8]

## B.

---

[8] Defendants' reliance on *Sto Corporation v. Lancaster Homes, Incorporated*, 11 F. App'x 182, 187 (4th Cir. 2001), for the proposition that actions may be parallel "even though . . . some of the claims asserted against the defendant in the federal action had not yet been asserted—but could be asserted—in the state action" is unavailing. Defs.' Reply 5. In *Sto*, the Fourth Circuit held the state and federal actions were parallel where the state and federal plaintiff had moved to amend the state court complaint to include the claims asserted in the federal action but the motion had not yet been ruled on. *Sto Corp.*, 11 Fed. App'x at 186–87. Indeed, the Fourth Circuit concluded that "[t]he federal court and the state court are in essentially the same position *because* [plaintiff] seeks to assert the same causes of action in both courts." *Id.* at 187 (emphasis added). That is not the situation here. Raloid does not seek to assert its claims in state court. And the Fourth Circuit in *Sto* did not hold that state and federal actions were parallel when a plaintiff *could* assert the same claims in state and federal actions; rather, the Fourth Circuit held only that state and federal actions were parallel because the plaintiff had asserted claims in federal court and sought to assert the same claims in state court. Thus, *Sto* does not compel the conclusion that this action and the Maryland action are parallel merely because Raloid could have asserts its claims here as counterclaims in the Maryland action.

Even assuming, *arguendo*, that the proceedings are parallel, defendants have failed to identify exceptional circumstances warranting abstention. The six factors to be considered when assessing the propriety of *Colorado River* abstention do not support a finding of exceptional circumstances.

The first of the six factors to be considered when determining whether the requisite exceptional circumstances exist to warrant abstention is whether there is real property at issue. *Chase Brexton Health Servs, Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005). There is no such property at issue. As such, the first factor does not favor abstention.

Second, "whether the federal forum is an inconvenient one" must be considered. *Id.* As defendants admit, all parties to this action are located in the greater Baltimore-Washington area. Defendants do not allege that the Eastern District of Virginia is an inconvenient forum. Accordingly, the second factor does not favor abstention.

Defendants argue that the third factor, "the desirability of avoiding piecemeal litigation"[9] strongly favors abstention because allowing both suits to proceed will raise issues of *res judicata*. Yet, the Fourth Circuit has confirmed that this risk alone does not warrant abstention. In this respect, the Fourth Circuit has emphasized "the general rule that our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." *Id.* at 462. Moreover, the Fourth Circuit has clearly stated that "for abstention to be appropriate, retention of jurisdiction must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly ill[-]suited for resolution in duplicate forums."[10] *Gannett Co., Inc. v. Clark Const. Group, Inc.*, 286 F.3d 737,

---

[9] *Chase Brexton Health Servs, Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005).

[10] For example, the Supreme Court in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819 (1976), concluded that the risk of piecemeal litigation "is heightened with respect to water rights, the relationships

744 (4th Cir. 2002). Defendants have not identified any such circumstances in this case. Indeed, defendants argue only that the ordinary costs and inefficiencies of piecemeal litigation warrant abstention here.

Defendants are incorrect. Although avoiding piecemeal litigation is generally desirable, "judicial diseconomy alone does not justify abstention." *Gordon v. Luksch,* 887 F.2d 496, 498 (4th Cir. 1989). This is true even where, as here, a federal plaintiff could have asserted its claim in related state litigation but did not do so. *Id.* Indeed, the Fourth Circuit reversed a finding that abstention was appropriate where the federal plaintiff could have raised his claim as a counterclaim in a pending state action but did not. *Id.* at 497–98. Accordingly, the desirability of avoiding piecemeal litigation does not support abstention here because defendants have not identified a heightened threat of piecemeal litigation.

Fourth, in assessing whether exceptional circumstances exist, the "order in which the courts obtained jurisdiction and the progress achieved in each action" must be considered. *Chase Brexton Health Servs, Inc.,* 411 F.3d at 464. Defendants argue that this factor strongly favors abstention because O'Connor filed the state action more than four months before Raloid filed the instant action. Yet, the Fourth Circuit has concluded that "[t]he order in which the courts obtained jurisdiction matters little" where the federal lawsuit was filed nine months after the state lawsuit. *New Beckley Min. Corp. v. Int'l Union, United Mine Workers Am.,* 946 F.2d 1072, 1074 (4th Cir. 1991). As such, defendants cannot persuasively argue that a four-month delay between the filing of the state and federal suits strongly favors abstention given that the Fourth Circuit has found a delay more than twice as long "matters little." *Id.* Furthermore, the state action here has not

---

among which are highly interdependent" such as to make "the allocation of water essentially involve the disposition of property and [thus] best conducted in unified proceedings."

11

proceeded past discovery. Indeed, Raloid represents that discovery requests have not yet been answered and depositions have not yet been taken. As such, it cannot be said that this factor strongly favors abstention.

The fifth factor in assessing whether exceptional circumstances exist is whether state or federal law provides the rule of decision on the merits. *Chase Brexton Health Servs, Inc.*, 411 F.3d at 464. Defendants argue that this factor strongly favors abstention because state law provides the rule of decision. Although defendants are correct that state law provides the rule of decision, this factor does not strongly favor abstention. The Fourth Circuit has concluded that where the questions of state law at issue "are uncomplicated[,] . . . they do not weigh in favor of abstention." *Gordon*, 887 F.2d at 498. Defendants do not contend that the state law issues here are complicated. As such, "[t]hat state law is implicated in this breach of contract action do[es] not weigh in favor of abstention." *Gannett Co., Inc. v. Clark Const. Group, Inc.*, 286 F.3d 737, 747 (4th Cir. 2002) (internal quotation marks and citation omitted). Furthermore, "in a diversity case, such as this one, federal courts regularly grapple with questions of state law, and abstention on the basis of the presence of state law, without more, would undermine diversity jurisdiction." *Id.* (citation omitted). Accordingly, defendants are incorrect that "[t]his factor strongly favors abstention." Defs.' Br. 10. That state law provides the rule of decision on the merits is far from the exceptional circumstances required for *Colorado River* abstention.

Sixth, the adequacy of the state proceedings to protect the parties' rights must be considered. *Chase Brexton Health Servs, Inc.*, 411 F.3d at 464. Defendants argue this factor strongly favors abstention because the parties' rights are well protected in the state proceeding. But the Fourth Circuit has explained that "the adequacy of state proceedings . . . typically [is] designed to justify retention of jurisdiction where an important federal right is implicated and state

proceedings may be inadequate to protect the federal right, or [to justify abstention] where retention of jurisdiction would create needless friction with important state policies." *Gannett Co., Inc. v. Clark Const. Group, Inc.*, 286 F.3d 737, 746 (4th Cir. 2002) (internal quotation marks and citations omitted). Defendants have neither identified an important federal right that is implicated nor shown that the exercise of jurisdiction would result in needless friction with important state policies.[11] As such, the adequacy of the state proceedings to protect the parties' rights does not favor abstention. Accordingly, none of the six factors support a finding of extraordinary circumstances warranting *Colorado River* abstention.

C.

Finally, defendants argue extraordinary circumstances justifying *Colorado River* abstention exist because (i) allowing the federal action to proceed would undo or undermine the state court's ruling, (ii) the federal lawsuit is reactive, and (iii) the federal lawsuit is vexatious. None of these arguments is availing.

First, defendants argue that allowing this action to proceed will undo or undermine the state court's ruling that O'Connor's claim against Raloid may not be severed from O'Connor's claims against the remaining state court defendants. This is not so. O'Connor's claim against Raloid remains in state court and remains consolidated with defendants' other state court claims. Allowing this federal action to proceed does not separate O'Connor's claim from the rest of his lawsuit, but rather allows Raloid to proceed with its claim against O'Connor and TyPay separately. Moreover, Maryland court rules provide for such separation, as Maryland makes counterclaims permissive, not compulsory. *See* Md. C.P.R. 2-331(a) ("A party *may* assert as a counterclaim any claim that

---

[11] Defendants contend that the central issue in this matter involves interpretation of a Maryland statute as to which the Maryland Court of Appeals has "taken a notable interest in consistent judicial interpretation." Defs.' Mem. 10. This alleged "interest in consistent judicial interpretation" does not rise to the level of an important state policy, and defendants have cited no case suggesting otherwise.

13

party has against any opposing party . . . .") (emphasis added). To the extent defendants argue that allowing this litigation to proceed will undermine the state court ruling because issues litigated here may have an issue preclusive effect in the state court action, this argument is unpersuasive. That a federal action may have an issue preclusive effect in a pending state action is not a sufficient reason to abstain. *See Colorado River Water Conservation Dist.*, 424 U.S. at 817 ("Generally, . . . the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.") (internal quotation marks and citation omitted). Indeed, the Fourth Circuit has noted that collateral estoppel, far from providing a reason to abstain, "minimizes the potential for undue waste" when state and federal proceedings are similar. *McLaughlin v. United Virginia Bank*, 955 F.2d 930, 936 (4th Cir. 1992). Accordingly, defendants' argument that failing to abstain will undo or undermine the state court's ruling on severance is unavailing.

Second, defendants argue that *Colorado River* abstention is appropriate because Raloid's federal suit is reactive. This too is unpersuasive. Defendants contend the action is reactive because Raloid did not mention its claims to defendants prior to filing the Complaint. But Raloid is not obligated to discuss its claims with defendants prior to filing suit. Moreover, defendants allege that counsel for Raloid and O'Connor met multiple times after O'Connor filed suit in state court and that Raloid did not mention its claims at those meetings. That Raloid did not raise its claims in meetings after O'Connor filed the state court action suggests that Raloid was uninterested in discussing its claims prior to filing suit, not that Raloid contrived sham claims after O'Connor filed suit.

Finally, defendants argue the "lawsuit is 'vexatious' because it consists entirely of claims that can be adjudicated adequately and completely in the existing Maryland state court action."

Defs.' Mem. 15. But the general "rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist.*, 424 U.S. at 817. As such, the mere fact that Raloid's lawsuit consists of claims that could have been raised in the state action does not provide a basis for abstention. *See Gordon v. Luksch*, 887 F.2d 496, 498 (4th Cir. 1989) (reversing abstention where federal plaintiff could have raised his claim as a counterclaim in a pending state action but did not). Accordingly, defendants' arguments that the reactive and vexatious nature of this lawsuit warrant abstention fail.

### D.

The Fourth Circuit in *vonRosenberg* concluded that "a federal court may abstain under *Colorado River* only if it concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *vonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017) (internal quotation marks and citation omitted). That is not the case here. Raloid has not asserted its claims as counterclaims in the state litigation, and Maryland does make Raloid's counterclaims compulsory. Md. C.P.R. 2-331(a) ("A party *may* assert as a counterclaim any claim that party has against any opposing party . . . .") (emphasis added). As such, the Maryland litigation cannot resolve all of the issues between the parties and thus does not provide a basis for abstention.

Although it may seem uneconomic to allow this case to proceed notwithstanding the related Maryland action, this result is required. Indeed, the *Colorado River* doctrine has "limited application" because "it is the Congress that should prescribe the Article III jurisdiction of the federal courts, not individual judges." *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934 (4th Cir. 1992). The state and federal actions are not parallel, and defendants have failed to identify

exceptional circumstances that warrant deviating from the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976). Although "it cannot be denied that there is overlap with . . . the state suit[], principles of res judicata, collateral estoppel, and equitable stay will help to minimize the potential for undue waste." *McLaughlin v. United Va. Bank,* 955 F.2d 930, 936 (4th Cir. 1992).

## IV.

Alternatively, defendants argue that venue is improper pursuant to Rule 12(b)(3), Fed. R. Civ. P. When considering a motion pursuant to Rule 12(b)(3), "[a] plaintiff is obliged . . . to make only a prima facie showing of proper venue." *Aggarao v. MOL Ship Mgmt. Co., Ltd.,* 675 F.3d 355, 366 (4th Cir. 2012). Importantly, evidence outside the pleadings may be considered. *Id.* at 365–66. When an action is filed in the wrong district, a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."[12] 28 U.S.C. § 1406. Defendants argue that venue is improper and request that this case be transferred to the United States District Court for the District of Columbia or to the United States District Court for the District of Maryland. Defendants' argument fails because Raloid has made a prima facie showing of proper venue in this forum.

Venue is proper in the judicial district where, *inter alia,* "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). According to the Complaint, two-thirds of the accounting services O'Connor and TyPay contracted to provide for Raloid were to be performed from TyPay's office in Virginia. Compl. ¶ 21. Defendants do not dispute the truth

---

[12] Even where venue is proper, a case may be transferred to another judicial district where it could have been brought "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a). Defendants did not move for a transfer of venue pursuant to § 1404(a), nor did defendants argue such a transfer is warranted here. Accordingly, transfer pursuant to § 1404(a) is not considered here.

of this allegation.[13] TyPay's website indicates that its only office is within the Eastern District of Virginia, and defendants have not contended otherwise. Indeed, defendants do not even address the fact that the Complaint identified § 1391(b)(2) as a basis for venue. *See Compl.* ¶ 8. Accordingly, plaintiffs have made a prima facie showing that a substantial part of the events or omissions giving rise to the claims occurred in this district, and venue is thus proper.

Defendants argue that venue is improper because TyPay is a citizen of the District of Columbia for purposes of diversity jurisdiction. But TyPay's citizenship does not undermine the conclusion that Raloid has made a prima facie showing that a substantial part of the events or omission giving rise to the claims occurred in this district. Moreover, TyPay's citizenship for diversity purposes does not determine its residency for venue purposes. *See* 28 U.S.C. § 1391(c) (defining residency for venue purposes). Indeed, defendants appear to concede as much; Raloid made this argument in its Opposition to defendants' Motion to Dismiss, and defendants did not mention venue in their Reply. Accordingly, defendants' request for a transfer of venue to the United States District Court for the District of Columbia or to the United States District Court for the District of Maryland must be denied.

An appropriate Order will issue.

Alexandria, Virginia
July 17, 2019

/s/
T. S. Ellis, III
United States District Judge

---

[13] Defendants assert in a conclusory fashion that "[t]he dispute between Raloid and Michael O'Connor has nearly no connection to Virginia, aside from O'Connor's personal company TyPay being registered in the state." Defs.' Mem. 17. However, defendants do not provide any support for this conclusion. Nor do defendants dispute that, as alleged in the Complaint, TyPay and O'Connor were to provide two-thirds of the accounting services in Virginia. *See* Compl. ¶ 8.